**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patrick J. CARROLL,
Defendant–Appellant.**

**No. 88–1666.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1988.

Decided April 3, 1989.

Steven J. Rosenberg, Steven J. Rosenberg, P.C., Chicago, Ill., for defendant-appellant.

Lisa A. Huestis, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and POSNER, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

The appellant, Patrick J. Carroll, was convicted on three counts of mail fraud in violation of 18 U.S.C. § 1341, and three counts of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 as a result of his participation in a series of insurance give-up schemes. On appeal, the appellant challenges the correctness of certain evidentiary rulings by the district court, particularly with respect to the admission of evidence under Fed.R.Evid. 404(b), and the

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

sufficiency of the evidence to support his conviction. We are unable to conclude that the admission of the disputed evidence constituted plain error or that a rational trier of fact could not have found the appellant guilty of the charged offenses beyond a reasonable doubt. Accordingly, we affirm the appellant's conviction on all six counts.

## I.

The appellant, Patrick J. Carroll, was indicted on November 20, 1987, for his role in a trio of insurance give-up transactions. An insurance "give-up" refers to the practice whereby the owner of an automobile arranges to have his vehicle taken in order to collect monies from the filing of a fraudulent insurance claim. The indictment charged the appellant with mail fraud and conspiracy to commit mail fraud with three such vehicle owners on three separate occasions. The conspiracy charges were predicated on the appellant's agreement with each of the owners to dispose of the particular automobile in question,[1] while the mail fraud counts arose from the mailing of false insurance claims and the subsequent mailing of the insurance checks.

In 1984, the Federal Bureau of Investigation (FBI) and the Illinois Secretary of State Police initiated an undercover operation code named "CHIRINGS,"[2] designed to investigate automobile theft in the Chicago area. FBI Agent Orrin Fuelling posed as the operator of a warehouse in Crestwood, Illinois, and the purchaser of stolen vehicles and insurance give-ups. The warehouse was fully equipped with video and audio recording devices to record these transactions.

In October of 1984, the appellant approached Agent John Mazzola of the Bureau of Alcohol, Tobacco and Firearms regarding the sale of weapons. Although the appellant was unable to close the deal regarding the firearms, he informed Agent Mazzola of his expertise with respect to automobiles and indicated that he had a 1981 Toyota "insurance job." Agent Mazzola directed the appellant to the FBI operation and Agent Fuelling.

The appellant sold Agent Fuelling three vehicles between November 1984 and January 1986. During the course of their negotiations, the appellant referred to his past experience as a car thief, his ability to alter vehicle identification numbers, and various other illegal activities. The tapes of these negotiations were admitted at trial over objection by the appellant. In addition, Agent Mazzola testified that the appellant claimed that he could obtain firearms and explosives, while Agent Fuelling testified that the appellant had frequently described his success in procuring false vehicle identification numbers, counterfeit titles, and the like. The appellant was convicted on each of the six counts contained in the indictment on February 4, 1988, and this timely notice of appeal was filed on March 24, 1988.

## II.

■ The principal issue raised in this appeal concerns the admissibility of certain portions of the video and audio tapes recorded during the negotiations between the appellant and Agent Fuelling. The appellant now argues that, insofar as the tapes contained references to his past activities as a car thief and his self-proclaimed ability to alter vehicle identification numbers, the evidence was inadmissible under Fed.R. Evid. 404(b).[3] The appellant raises similar 404(b) objections to the admission of certain portions of the testimony by Agents Mazzola and Fuelling.

---

1. The three automobiles delivered by the appellant were a 1978 Cadillac, a 1984 Chevrolet Camaro, and a 1985 Oldsmobile Delta 88.

2. The code name "CHIRINGS" was an abbreviated version of "Chicago Auto Theft Rings."

3. Rule 404(b) provides that:
    (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admisssible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b).

In examining the disputed tapes and testimony, there can be no doubt but that the references to the appellant's past conduct concerned "acts" within the meaning of 404(b). *See United States v. Shriver*, 842 F.2d 968 (7th Cir.1988) (default on a contract act for 404(b) purposes). Furthermore, it is at least arguable that the prior acts in question could lead a trier of fact to conclude that: (1) the appellant was the kind of person likely to be involved in illegal transactions, particularly with respect to automobiles; and (2) the appellant acted in conformity with this character trait by participating in the give-up schemes giving rise to the instant charges.[4] The appellant is therefore correct in suggesting that the evidence falls within the purview of Rule 404(b), but, inasmuch as the appellant failed to make a specific objection to the evidence on 404(b) grounds and thereby preserve the issue for appeal, we need not reach the issue of whether the evidence was admissible under Rule 404(b). *See United States v. Requarth*, 847 F.2d 1249, 1254 n. 6 (7th Cir.1988); *United States v. Wynn*, 845 F.2d 1439, 1442 n. 7 (7th Cir. 1988). As this Court has only recently noted, "[t]o preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *Wynn*, 845 F.2d at 1442; *see also Sherrod v. Berry*, 856 F.2d 802, 811–12 (7th Cir.1988); *United States v. Allen*, 798 F.2d 985, 1013 (7th Cir.1986). Moreover, "[t]he specific ground for reversal of an evidentiary ruling on appeal must also be the same as that raised at trial." *Wynn*, 845 F.2d at 1442 (quoting *United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987)).

In *United States v. Wynn*, 845 F.2d at 1439, the defendant objected to portions of a witness' testimony on the grounds that the testimony was hearsay and lacked a sufficient foundation. *Id.* at 1442. On appeal, the defendant objected to the evidence under Rule 404(b). This Court ruled that the defendant had waived his right to raise the 404(b) issue on appeal and analyzed the district court ruling under the plain error standard. *Id.*

Similarly, in *United States v. Laughlin*, 772 F.2d 1382 (7th Cir.1985), this Court ruled that the defendant's objection to certain photographs on relevancy and prejudice grounds did not preserve the issue for appeal on 404(b) grounds. *Id.* at 1391–92.

In the instant case, the appellant made timely objections to the tapes as a whole, rather than to the offending portions, as well as general objections to the disputed testimony of Agents Mazzola and Fuelling. The appellant concedes that he failed to make a specific objection to the evidence on 404(b) grounds, but argues that the basis for his objection was apparent from the context. *See* Fed.R.Evid. 103(a)(1).[5] We do not agree. The record indicates that the appellant objected to the evidence on relevancy and prejudice grounds rather than as prior bad acts excludable under Rule 404(b).[6] The appellant's failure to make a specific objection under 404(b) prevented

---

**4.** The purpose of Rule 404(b) is to "prevent evidence of a defendant's crimes or acts from being admitted merely to suggest that 'a man with such a defect of character is more likely than men generally to have committed the act in question.'" *United States v. Shriver*, 842 F.2d 968, 972 (7th Cir.1988) (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence § 404[8]).

**5.** The appellant bases his argument on Rule 103(a)(1), which allows that:
    (a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
    (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context;* .... (emphasis added).
Fed.R.Evid. 103(a)(1).

**6.** The appellant argued below that the prior acts in question were irrelevant to the instant give-up schemes and that such evidence was unduly prejudicial as a result of its tendency to portray the appellant as a criminal. Any latent objection under Rule 404(b) was apparently so subtle as to elude the district court—a point the appellant seems to concede in his admission that the district court did not base its decision on 404(b) grounds. Such an objection clearly fails to meet the requirements for specificity set forth in Fed.R.Evid. 103(a)(1).

the district court from considering the admissibility of the evidence as a prior bad act—the very issue now presented on appeal. *Wynn*, 845 F.2d at 1442. If an issue has not been properly preserved for review, we must examine the ruling under the plain error standard of review. *Id.; Laughlin*, 772 F.2d at 1392; Fed.R.Crim.P. 52(b).

■ A plain error is one that results in "an actual miscarriage of justice," *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), such that the defendant "probably would have been acquitted but for the erroneously admitted evidence." *Wynn*, 845 F.2d at 1443; *see also United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988); *United States v. Sblendorio*, 830 F.2d 1382, 1388 (7th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). Even if we were to assume that the district court rulings were in error,[7] we simply cannot conclude that the appellant would have been acquitted but for the erroneously admitted portions of the evidence.

The appellant also questions the correctness of the district court ruling prohibiting comment on the vehicle owners' absence at trial. In *United States v. Sblendorio*, 830 F.2d at 1382, this Court engaged in an extended review of our often conflicting decisions as to when a party may comment on missing witnesses and concluded that:

> The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party, therefore is sound. But the administration of this principle, as of other prudential rules, is committed to the sound discretion of district courts.

*Id.* at 1394.

In applying this "sound" principle to the instant case, we have serious doubts as to whether the vehicle owners could reasonably be said to be under the control of the government, let alone that the district court abused its discretion in prohibiting the appellant from commenting on their absence. The sole reason proffered by the appellant as to why the vehicle owners should be considered "under the control of" the government is the threat of prosecution the owners faced for their role in the give-up schemes. Standing alone, we are unwilling to rule that the threat of prosecution is sufficient to place a party under the control of the government.

■ In reviewing whether the evidence was sufficient to support the appellant's conviction, we must read the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the charged offenses proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Rivera*, 855 F.2d 420, 424 (7th Cir.1988); *Whaley*, 830 F.2d at 1472–73. The appellant suggests that the vehicle owners' absence made it "logically impossible" for the government to prove not only the conspiracy charges but the substantive mail fraud counts as well. We find the appellant's argument to be utterly without merit and to come perilously close to the level of frivolity worthy of sanctions under Fed.R. Civ.P. 11.

While it is true that the testimony of the vehicle owners would have illuminated the precise nature of the appellant's role in the instant transactions, it is hardly the case that every piece of relevant evidence, even highly probative evidence, must be adduced at trial to obtain a conviction. The government introduced evidence that permitted the jury to find that: (1) the appellant approached Agent Fuelling on three separate occasions with an offer to sell certain vehicles; (2) the appellant referred to these vehicles as "give-ups"; (3) the appellant related the intended scheme to defraud the insurance companies to Agent Fuelling; (4)

---

7. Once again, we are not ruling that the district court erred in admitting the disputed evidence. It is entirely possible that the evidence was admissible for one of the other purposes provided for in Rule 404(b), but we need only find that any alleged error does not rise to the level of plain error in order to affirm the appellant's conviction.

the appellant delivered each of the three vehicles pursuant to his agreement with Agent Fuelling; and (5) the appellant had his story corroborated by the subsequent defrauding of the insurance companies in accordance with the previously-outlined scheme. Given the fact that it is "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, [that] an appellate court [may] overturn the verdict," *Whaley*, 830 F.2d at 1473 (quoting *United States v. Brandom*, 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)), it seems abundantly clear to this Court that the evidence presented at trial was sufficient for a rational trier of fact to find the appellant guilty of mail fraud and conspiracy to commit mail fraud beyond a reasonable doubt. We therefore reject the appellant's claim that the evidence was insufficient to support his conviction.

### III.

In light of the foregoing analysis and conclusions, we hereby AFFIRM the appellant's conviction on all six counts.