PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
----------
No. 96-5421
----------
D.C. Docket No. 96-576-CR-KMM


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

ISABEL RODRIGUEZ DE VARON,

                                        Defendant-Appellant,

----------
Appeal from the United States District Court for the
Southern District of Florida
----------

**(March 3, 1998)**

Before DUBINA and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.


GODBOLD, Senior Circuit Judge:


Isabel Rodriguez De Varon appeals from a conviction of the importation of heroin in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2(1). She was convicted in the U.S. District Court for the Southern District of Florida after pleading guilty to the charge. She was sentenced to 46 months in prison. She appeals the district court's denial of a two-point sentence reduction for

her role as a minor participant in the crime.  We have reviewed her contentions and vacate and remand her sentence for further proceedings in the district court.

## I. Factual and procedural history

De Varon arrived at Miami International Airport on June 12, 1996 aboard a flight from Bogota, Columbia.  She reported to United States Customs, and officials suspected that she might be an internal carrier of narcotics.  When examined by the officials she admitted that their assumption was correct.  De Varon was then taken to a hospital where medical examination revealed that she had ingested 70 pellets of heroin.  The government recovered 514 grams of 85 percent pure heroin from De Varon.

A federal grand jury returned a two-count indictment against De Varon charging her with importation of heroin in violation of 21 U.S.C. § 952 (a) and 18 U.S.C. § 2; and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  De Varon agreed to plead guilty to the charge of importation alleged in Count One and to forfeit the $2,350 she was carrying at the time of her arrest in return for the government's agreement to dismiss Count Two.  The government also agreed that it would not oppose De Varon's request for a three-level sentence reduction for timely acceptance of responsibility or her application for the "safety valve" protection provided in

the sentencing guidelines if she met all of the requirements. <u>See</u>

U.S. Sentencing Commission, <u>Guidelines Manual</u>, § 5C1.2 (Nov.

1995).[1]

The district court accepted the plea and ordered that a

Presentence Investigation Report be prepared.  The report

calculated De Varon's base offense level under the guidelines as

a 28.  The preparer then deducted two levels because De Varon

qualified for the "safety valve" provision found in USSG §

2D1.1(b)(4)[2] and three more levels for De Varon's timely

---

[1]Section 5C1.2 of the sentencing guidelines provides that a court may sentence below the statutory minimum where the defendant meets the five requirements provided in 18 U.S.C. § 3553(f)(1)-(5). The five criteria are:
(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

[2]Section 2D1.1(b)(4) provides that "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of §5C1.2

acceptance of responsibility for her conduct as provided by USSG §§ 3E1.1(a) & 3E1.1(b)(2). The resulting offense level was a 23. After determining that De Varon had no prior criminal convictions the preparer assigned her a criminal history category of I. The sentencing guideline range for an offense level of 23 with a criminal history of I is 46 to 57 months.

De Varon objected to this calculation, insisting that she should be granted a mitigating downward adjustment for her minimal or minor role in the offense. The probation officer who prepared the report rejected her assertions as did the district court. The court noted that De Varon offered no evidence other than her own statement to prove that other, more culpable parties existed and had participated in the crime. Furthermore, the court stated that even if her account of other participants was true, it would not reduce her sentence. The court said:

> [T]he fact that she can point to other people that may have provided the narcotics to her would not alter my own determination that she played an integral and essential part in the scheme to import.
> As I have noted in the past, but for individuals willing to perform the role that this defendant played, we would not have the importation being attempted or succeeding in other instances.

(Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, [the offense level should be] decrease[d] by 2 levels." USSG § 2D1.1(b).

> And, . . . the guidelines refer to a small amount of drugs to entitle the defendant to a reduction. And I would conclude that 512.4 grams of heroin is not a minor amount within the meaning of the guidelines in order to entitle someone to [sic] minor or minimal level role.

After denying her requests for a downward adjustment the court sentenced De Varon to 46 months in prison. On appeal De Varon raises only one substantive issue, whether she should have been granted a sentence reduction based on her minor role as a courier of the heroin.[3]

## II. Discussion

A. Standard of review

The parties dispute the proper standard of review for this case. The government contends that a district court's determination of whether a defendant qualifies for a sentence reduction based on her role must be reviewed only for clear error. De Varon urges that the decision of the district court is subject to de novo review. De Varon is correct. While it is true that we review the district court's factual findings with deference, when we examine its legal conclusions as to what proof

_____

[3]De Varon also requested a downward adjustment to her sentence based on her particular family circumstances. She asserted that she has a child who is mentally retarded and going blind and that her presence is necessary for his care. The district court declined to adjust her sentence based on her family situation. She does not appeal that denial, and we do not address it.

is required for a role adjustment we must exercise de novo review.  See U.S. v. Veloza, 83 F.3d 380, 381 (11th Cir. 1996); U.S. v. Rojas, 47 F.3d 1078, 1080 (11th Cir. 1995).   In this case the district court decided that as a matter of law a courier who is the sole charged participant in a drug crime is not eligible for a role reduction as a minor participant where she offers only her own testimony as proof of her role.  The court also determined that the amount of drugs imported was conclusive in determining role.  These are legal conclusions subject to our de novo review.

B. The minor role adjustment

Section 3B1.2 of the sentencing guidelines provides a two to four-point offense level reduction where a defendant's role in a crime can be described as minimal or minor.  The guidelines provide a four-level decrease for minimal participants, a two-level decrease for minor participants, and a three-level decrease for those participants whose role falls between minimal and minor. USSG § 3B1.2(a)&(b).  To receive a four-level reduction a defendant must be "among the least culpable of those involved in the conduct of a group. . . . [L]ack of knowledge or understanding of the scope and  structure of the enterprise and of the activities of others is indicative of a role as minimal participant." USSG § 3B1.2, comment. n.1.  The commentary gives

an example of a minimal participant as "someone who played no other role in a very large drug smuggling operation than to off load part of a single marihuana shipment, or . . . [who] was recruited as a courier for a single smuggling transaction involving a small amount of drugs." Id. at n.2.

A minor participant in a crime is described as someone "who is less culpable than most other participants, but whose role could not be described as minimal." Id. at n.3. The guidelines also note that "[t]he determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case." USSG § 3B1.2, comment. (backg'd.).

These comments indicate that downward adjustments based on role are highly fact specific and that courts should make a separate inquiry as to whether the facts support any of the three levels of departure. In the present case the district court considered both a minimal role reduction and a minor role reduction simultaneously rather than applying the standard that is unique to each ground for departure.

The district court's ruling at the sentencing hearing can be interpreted as denying a downward adjustment for each of the three following alternative reasons: (1) the court found that De Varon's uncorroborated account of the crime and its participants was unbelievable; (2) couriers of drugs should never be

considered minimal or minor participants because they are an indispensable part of the drug importation scheme; and (3) the amount of heroin that De Varon imported was too large for her to be considered for either a minimal or minor role reduction. Because the court offered these reasons in the alternative, we could affirm its decision if any one of them properly supported its denial of a downward adjustment. De Varon concedes that the court's third reason for the denial, drug amount, is a proper ground for denying a minimal role adjustment. She challenges only the court's denial of her request for a minor role adjustment pursuant to USSG § 3B1.2(b).

i. De Varon's testimony

The district court's first reason for denying the request for an adjustment hinged on the fact that De Varon offered only her own, uncorroborated testimony to prove that other participants in the crime were more culpable than she was. De Varon offered to testify that she was in desperate need of money for her son's operation and that she was approached by a woman named "Nancy" at De Varon's workplace who solicited her to become an internal carrier of drugs. De Varon also proposed to testify that she was to be met by an unknown person at the Miami airport who would take the heroin. The district court declined to hear this testimony. Instead the court ruled that because the

8

defendant bears the burden of proof in establishing role, De Varon's uncorroborated testimony was either unbelievable or facially insufficient to establish her as a minor participant.[4]

To the extent that the court found her testimony unbelievable, this finding was inconsistent with its earlier decision, concerning the "safety valve" provision, that De Varon had been completely truthful with the court. By finding De Varon eligible for the "safety valve" protection of USSG § 5C1.2, the court had to find that De Varon had "not later than the time of the sentencing hearing, . . . truthfully provided to the Government all information and evidence . . . [that she had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(5). The "safety valve" provision of the guidelines allows a court to sentence a defendant below the statutory minimum and to grant a two-level decrease where it finds that the defendant does not have a criminal history, did not use violence or cause injury, was not an organizer or leader, and has been completely truthful with the court. USSG §§ 2D1.1(b)(4) & 5C1.2. The government did not oppose De Varon's application for the safety valve, and the district court found that she met all requirements

---

[4]The court's comments do not clearly indicate whether it found De Varon's testimony unbelievable or whether the uncorroborated testimony of a courier is never sufficient to establish role.

for the protection of this provision.  Therefore, the court must have found that she had truthfully provided <u>all</u> information that she had concerning the crime.  To discredit De Varon's testimony later in the sentencing hearing is an inconsistent finding.  <u>See</u> <u>Anderson v. City of Bessemer City, North Carolina</u>, 470 U.S. 564, 575 (1985)(generally a district court's findings on whether testimony is true cannot be deemed clear error unless internally inconsistent); <u>Colvin v. U. S</u>., 549 F.2d 1338, 1341 (9th Cir. 1977) ("These two findings are inconsistent and one must fall as clearly erroneous.").  Because the court specifically found De Varon truthful, it is bound to consider her testimony for the purpose of determining role.

The district court also indicated that the uncorroborated testimony of a courier alone is insufficient to establish role. We do not limit the district court's power to find, based on all the evidence in the record, that a defendant's testimony describing her participation in a scheme is not credible. However, we do hold that status as a courier is not by itself a sufficient ground to support a credibility finding.  Other grounds may support a credibility decision, but status alone does not.  Whether other considerations exist that detract from a particular defendant's believability is for a district court to decide.  In this case the defendant's truthfulness was predetermined by the court, and credibility should not have been

10

an issue.

The district court did not properly support its decision to disregard De Varon's testimony on her role in the scheme. When a court finds that a defendant has truthfully provided all information that she has regarding the crime then the court must consider that information in determining the defendant's role. Furthermore, status as a courier alone is not enough to sustain a credibilty finding. Because the district court's decision to disbelieve De Varon was inconsistent with its earlier finding that she had truthfully disclosed all information that she knew about the crime, we must look to the court's other proffered reasons for its denial of De Varon's request for a downward adjustment based on role.

ii. The role of couriers

The district court stated that even if it had believed De Varon's proposed testimony it would deny a minimal or minor role reduction because couriers are an "integral and essential part in the scheme to import. . . . [B]ut for individuals willing to perform the role that this defendant played, we would not have the importation" of drugs. The court's statement comes very close to propounding that couriers are ineligible for role adjustments as a matter of law. This circuit has firmly rejected that contention.

11

In U.S. v. Veloza, we stated that "the fact that a courier plays an essential role in an importation scheme does not alone necessarily preclude him from receiving a reduction for a minor role." Veloza, 83 F.3d at 382. We relied on the language of the guidelines in making this statement noting that "[i]f the guidelines foresee granting a four-level reduction to a courier as a less-culpable minimal participant, they certainly do not foreclose granting a two-level reduction to a courier as a minor participant." Id. Veloza's guidance comports with the general rule that "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." Koon v. U.S., 116 S. Ct. 2035, 2050 (1996). Indeed the guidelines specify that the decision to grant a role adjustment is "heavily dependant on the facts of each case." USSG § 3B1.2, comment.(backg'd.).

The government has suggested that the district court's ruling can be affirmed because it makes no sense for De Varon to claim that she was a minor participant in her own conduct. In support of this proposition the government cites two Seventh Circuit cases, U.S. v. Lampkins, 47 F.3d 175, 181 (7th Cir. 1995) and U.S. v. Burnett, 66 F.3d 137, 140 (7th Cir. 1995).[5] These

---

[5]The government also cites the Eleventh Circuit case of U.S. v. Costales, 5 F.3d 480, 484 (11th Cir. 1993), for this proposition. The holding of Costales does not support the government's position in this case. Costales denied a role reduction to a defendant convicted of buying child pornography

12

cases hold that where a defendant is sentenced only for the amount of drugs actually handled by that defendant, a minor role adjustment is unwarranted because one is not a minor participant in one's own conduct. <u>Lampkins</u>, 47 F.3d at 181. We reject this rationale.

In 1990 the Sentencing Commission amended the commentary to Chapter 3, Part B of the guidelines, which concerns level adjustments based on role. This amendment announced that, "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4),[6]

_____

from undercover government agents. <u>Id</u>. Because the guidelines do not recognize government agents as participants, <u>See</u> USSG § 3B1.1, comment. n.1, Costales was the only imaginable participant in the crime. This holding is different from the Seventh Circuit's position that a defendant cannot be a minor participants in his own conduct even where other participant in the crime exist.

[6]Section 1B1.3(a) defines relevant conduct as:
(1)   (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
        (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
(2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan

13

and not solely on the basis of elements and acts cited in the count of conviction." USSG Ch.3, Pt.B, intro. comment. This amendment suggests that courts must look to the entire criminal scheme that produced the crime in question and weigh the relative culpability of all participants in that scheme. The guidelines define participant as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, comment. n.1.

The government's stance ignores the plain directives of the guidelines. Declaring that De Varon cannot be a minor participant in her own conduct overlooks the fact that the "relevant conduct" a court must consider in an importation scheme includes much more than the lone acts of the actual courier. Under the definition provided in the guidelines, participants in the crime might include those who provided the heroin for importation, those who solicited De Varon as a courier, those who were to receive the heroin in Miami, and those who procured buyers or distributors for the heroin in the United States. All of this conduct is relevant.

A court must examine the defendant's role in the scope and

---

as the offense of conviction;
    (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
    (4) any other information specified in the applicable guideline.

14

structure of the scheme, including whether this was the defendant's single contact with the criminal enterprise and whether the defendant had any connection to the source or destination of the drugs. At the least a court must make some factual inquiry which measures that particular individual's conduct against that of the other participants in a criminal scheme. See U.S. v. Webster, 996 F.2d 209, 212 (9th Cir. 1993)("the evidence available to the court at sentencing must, at a minimum, show (i) that the 'relevant conduct' . . . involved more than one participant . . . [and](ii) that the defendant's culpability . . . was relatively minor compared to that of the other participant(s)."); U.S. v. Caballero, 936 F.2d 1292, 1299 (D.C. Cir. 1991)("[S]ection 3B1 allows the sentencing judge to look to the contours of the underlying scheme itself rather than the mere elements of the offense charged.")(internal quotations and citations omitted).

The fact-specific nature of this inquiry makes the district court's comments in this case improper. It did not examine De Varon's role in comparison to the conduct of other participants in the criminal scheme to import heroin. After the necessary inquiry is made, the district court may determine De Varon's role according to what the facts of this case warrant.[7]

_____

[7]We note that the role of a courier can vary widely in an importation scheme. Some couriers may be the most culpable or even sole participant in the crime of importation, while others

Because the district court in this case based its second reason for denial solely on De Varon's status as a courier, rather than on the distinct factual ingredients of her case, we cannot credit that reason to deny her request for a minor role reduction.

iii. Amount of heroin

We next consider the district court's third reason for its denial of a downward adjustment, the amount of heroin. The court stated "that 512.4 grams of heroin is not a minor amount within the meaning of the guidelines in order to entitle someone to [sic] minor or minimal level role." This assertion is an erroneous statement of the law. The guidelines indicate that amount alone may preclude a departure on the ground of minimal participation. USSG 3B1.2, comment. n.2.[8] They do not offer the same illustration for a minor role adjustment. The guidelines instruct that minimal and minor reductions assume two different levels of culpability. The inquiries that a court must make for each are different. While amount may be relevant in determining

---

may not even know the true nature of the substance they transport. This discrepancy is the reason the guidelines require a factual inquiry and the reason we decline to fashion a per se rule on the role of couriers.

[8]De Varon concedes this point as to minimal role adjustments, (but not as to minor role adjustments) and because she does not appeal her denial of a minimal adjustment, we do not consider this issue.

role, it alone should not prevent a minor reduction. <u>See</u> <u>Webster</u>, 996 F.2d at 212 n.5. ("Although a finding that Webster carried a substantial amount of PCP would foreclose a minimal participant adjustment, it does not prevent an adjustment for minor participation.").

Relying on the amount of drugs carried by a courier is not a sufficient substitute for the factual inquiry that the guidelines require in determining a defendant's role.[9] The court's third reason for denying a minor-role sentence adjustment is therefore inadequate.

We find each of the district court's reasons for denying the role adjustment flawed. The court did not make the proper factual findings regarding De Varon's role; therefore we cannot determine whether she is entitled to a minor role adjustment. We must vacate her sentence and remand so that the district court can make the factual investigation that this determination requires.

## III. Conclusion

We VACATE De Varon's current sentence and REMAND this case

---

[9]We also note that the amount of drugs carried is the sole factor used to determine a defendant's base offense level for the purpose of sentencing. Because amount is already taken into consideration by the guidelines in determining the appropriate sentence it should not also be the sole factor in denying a minor role adjustment.

17

to the district court with instructions to make an appropriate factual inquiry into De Varon's role in the criminal scheme to import heroin and to resentence De Varon accordingly.